CHARLES T. LUCKETT *v*. STATE OF INDIANA.

[No. 1171S327. Filed July 25, 1972.]

*McDonald, McDonald and Nixon,* of Princeton, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal by Charles T. Luckett from a judgment in the Gibson Circuit Court convicting him of the crime of Entering to Commit a Felony. Trial was to a jury, and upon conviction appellant was sentenced to a term of not less than one (1) nor more than five (5) years in the Indiana State Prison.

The issues presented for review on appeal may be grouped as follows:

1. Whether the arresting officer had probable cause (a) to stop the automobile in which appellant was a passenger, and (b) to subsequently place the appellant under arrest.

2. Whether the automobile in which appellant was riding was illegally seized, and, subsequently, illegally searched at the State Police Post. (During said search, certain items were seized which were later introduced at trial.)

3. Whether the State's failure to disclose to appellant a complete list of *all* items seized and a list of *all* witnesses who were to testify at trial, as ordered by the trial court, should render certain exhibits and testimony inadmissible at trial. (The original list of witnesses was amended to add two witnesses on the morning of the trial.)

4. Whether the court erred in permitting the State to reopen its case.

5. Whether the evidence is sufficient to sustain the verdict of the jury.

For purposes of convenience and clarity, we will resolve the sufficiency of the evidence issue prior to turning our attention to the other questions presented on this appeal. The evidence most favorable to the State, as revealed by the record, is as follows: Early on the evening of January 7, 1971, Herschel Trice, the custodian of the Methodist Church in Princeton, Indiana, observed that the back door of Harden Bros. Tire & Supply Co. was standing open, and that the window glass on the door had been broken out. The tire store was located directly across the alley from the Methodist Church. He also observed an automobile with one person in it which was parked a short distance from the back of the store. Shortly thereafter, Trice saw two men enter the alley from the back door of the tire store and proceed to load the automobile with various items carried from the store. Trice immediately telephoned the police to report this unusual activity. Before

the police arrived, the three persons drove away and were last observed by Trice driving west on Broadway toward the highway. The only identification Trice could offer was that two of the three suspects were Negro males and that the car appeared to be a green Chevrolet bearing a license plate prefix of 82J.

The manager of the tire store was summoned by the police, and, upon request, he furnished them a brief list of the items missing from the store. A description of the automobile and the fact that some of the stolen property consisted of a case of wristwatches was broadcast over the State Police radio band. Jeremy Jackson, an Indiana State Patrolman, received the radio broadcast, and while proceeding south on U.S. Highway 41, he approached a green automobile containing three persons and bearing a license plate prefix 82J. Jackson thereupon stopped the automobile, which was, in fact, an Oldsmobile rather than a Chevrolet. At this time, approximately thirty minutes had elapsed since the time of the break-in at the tire store.

After the car had been stopped, the driver of the green automobile, Leroger McKinzie, ran back to the police car before Jackson had the opportunity to get out of his car. Jackson requested that the driver produce his operator's license. McKinzie replied that he had left his license in his jacket which was in his car. Jackson followed McKinzie back to the green automobile, and, using a flashlight, he quickly looked inside the car where he observed a case of wristwatches which was in plain view on the top of the back seat. Jackson then proceeded to place all three persons under arrest. Two of the persons, McKinzie and Luckett (appellant), were Negro males; the third person was a female.

Jackson radioed for assistance, and soon thereafter, the three suspects were transported to the State Police Post in Evansville, Indiana. The green Oldsmobile was impounded, and it, too, was taken to the State Post. While the suspects

were in custody, the automobile was searched without a warrant. The search revealed various items, all of which were introduced at trial and identified as being property taken from the tire store in Princeton, Indiana, during the aforementioned break-in. It should further be noted that at the time of his arrest appellant was in possession of $15.37 in change. At trial, the manager of the tire store testified that $15.70 in change had been taken during the break-in.

It is well established law that when reviewing for the sufficiency of the evidence, this Court will neither weigh the evidence nor determine the credibility of witnesses. If there is substantial evidence of probative value sufficient to establish every material element of the crime beyond a reasonable doubt the verdict will not be disturbed on appeal. See, *Valentine* v. *State* (1971), 257 Ind. 197, 273 N. E. 2d 543; *Thomas* v. *State* (1971), 256 Ind. 309, 268 N. E. 2d 609. In the case at bar, the crime for which appellant was convicted consists of two material elements which must be established: (1) the entry into the tire store by the appellant, and (2) his intent to commit a felony therein. See, *Crawford* v. *State* (1968), 251 Ind. 437, 241 N. E. 2d 795. The church custodian testified that he saw two Negro males leaving the tire store, both of whom were carrying various items. The custodian also gave a brief description of the automobile in which the two men fled the scene of the crime, accompanied by a third, unidentified, person. Within a short time after the break-in, the appellant was arrested while riding in an automobile which matched the description of the car observed at the scene of the crime. There were only two Negro males in the automobile which was loaded with merchandise taken from the store. In appellant's actual possession, $15.37 in change was found which is an amount almost equal to the amount reported taken during the break-in. The elements of the crime of entering to commit a felony may be proved by both direct and circumstantial evidence. *Wojcik* v. *State* (1965), 246 Ind. 257, 204 N. E. 2d 866; *Crawford* v. *State, supra.* This

court is of the opinion that there is an abundance of evidence, both direct and circumstantial, from which the jury could have inferred that the appellant was one of the two Negro males seen leaving the back door of the tire store, and we therefore conclude that appellant's contention that the evidence is insufficient to sustain the verdict is without merit.

A more serious question is presented in regard to whether the police had probable cause to stop the automobile initially. This action amounted to a detention of the person, and thus, in its technical sense, constituted an arrest. See, *Henry* v. *United States* (1959), 361 U.S. 98. Probable cause for an arrest could be defined to be facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense. See, *Carroll* v. *United States* (1925), 267 U.S. 132. In the case at bar, Officer Jackson had been informed only that the suspected felons had fled the scene of the crime driving a green Chevrolet bearing a license prefix of 82J. There is no evidence that Jackson was ever informed of the number of persons involved or that two of the suspects had been identified as being Negro males. The automobile in which the appellant was riding turned out to be an Oldsmobile, rather than a Chevrolet. It is readily apparent that Officer Jackson did not have probable cause to stop every green automobile with an 82J license prefix and formally arrest its occupants. However, this case involves the flight of suspected felons, and Officer Jackson was placed in a position where he had to choose between immediate action on one hand and restraint on the other. Efficient and effective law enforcement, in which there is a strong governmental interest, can best be accomplished by immediate action such as that taken by Officer Jackson in the instant case. It appears to be well settled that there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking. *Adams, Warden* v.

*Williams,* 40 USLW 4724, (U.S. Dec. June 12, 1972) ; *Terry* v. *Ohio* (1968), 392 U.S. 1; *Rios* v. *United States* (1960), 364 U.S. 253; *Wilson* v. *Porter* (9th Cir. 1966), 361 F. 2d 412. The constitutionality of such detention depends solely upon the reasonableness of the action taken by the police officer. In *State* v. *Smithers* (1971), 256 Ind. 512, 269 N. E. 2d 874, a case which involved the question of the legality of the action taken by two police officers in stopping an automobile for a suspected curfew violation, the Court stated:

"In order to determine the reasonableness of the intrusion into defendant's privacy by the police conduct in stopping the car we must examine the *facts known to the officers at the time they stopped the car.* In *Terry* v. *Ohio* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889, the Supreme Court said:

'And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) ; *Beck* v. *State of Ohio,* 379 U.S. 89, 96-97, 85 S. Ct. 223, 229, 13 L. Ed. 2d 142 (1964).' " 256 Ind. at 517, 269 N. E. 2d at 877.

Thus the question before this Court is whether the facts known to Officer Jackson at the time he stopped the car were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropriate. Jackson had a brief, but sufficient, description of the automobile; the crime had been committed only a short time beforehand,

and the car was discovered traveling away from the scene of the crime at a location which was within the range of possible flight. The fact that Jackson stopped an automobile which was not a Chevrolet, which was action conflicting with the information received in the radio dispatch, should not be considered to be a substantial deviation from a proper course of conduct, even if undertaken intentionally. This Court is of the opinion that the above facts are certainly sufficient to justify the action taken by Officer Jackson, and we conclude, therefore, that no constitutional violation resulted.

Having determined that the automobile was legally detained in the first instance, we must next decide whether the investigation conducted by Jackson was carried out in a manner which would constitute an infringement upon the appellant's constitutional rights. Notwithstanding the fact that appellant was only detained and was not subjected to any form of questioning during the period of brief detention, in cases involving the apprehension of suspected felons fleeing the scene of the crime in an automobile, we find nothing unreasonable in permitting the investigating officer to request that an operator's license be produced by the driver of the vehicle. Nor do we find it unreasonable to permit the officer to request the presentation of the certificate of registration. This limited intrusion would provide information which might later prove to be invaluable in the effort to apprehend the criminals in the event that additional information is gained from a more thorough investigation of the crime. Furthermore, it should certainly be permissible for the officer to observe the occupants of the automobile, and to take cognizance of any items in the automobile which are in plain view. Where the confrontation occurs at night, the officer should be permitted to make this observation with the use of his flashlight. We base this latter decision on our holding in *Alcorn* v. *State* (1970), 255 Ind. 491, 265 N. E. 2d 413, where it was determined that objects observed in plain view by a

police officer who was rightfully positioned were not the products of a search within the meaning of the Fourth Amendment. Moreover, should it later be determined that such an observation is a search within the meaning of the Fourth Amendment, this Court is of the opinion that this warrantless intrusion is of so trivial a nature that it is entirely reasonable under the circumstances. Indeed, it would be absurd to hold that an officer may legally stop an automobile on the grounds that its occupants may be felons fleeing the scene of a recent crime, but then to prohibit the officer from observing the occupants or other objects which are in plain view in the car. In the case at bar, Officer Jackson merely requested the driver of the car, McKinzie, to produce his operator's license. McKinzie returned to his car to secure his license and Jackson followed him. Upon reaching the car, Jackson, who was rightfully positioned, shined his flashlight inside where he observed the case of wristwatches which had been placed on the backseat. At this time, the suspects were placed under formal arrest, thus ending the period of brief detention. The reasonableness of an investigation conducted during a period of brief detention where probable cause for a formal arrest is lacking is a matter which will have to be determined on a case by case basis. Under the facts of the case at bar, we hold that the investigation was reasonably conducted and that no constitutional violation occurred. Furthermore, we are of the opinion that when Jackson observed the wristwatches he then had probable cause to arrest the appellant. Therefore, no violation whatsoever occurred in regard to appellant's arrest.

Appellant's next contention is that the stolen merchandise seized pursuant to the warrantless search of the automobile which was conducted at the police post should not have been admitted into evidence at trial due to the alleged illegality of the search. We do not agree. The facts of this case are remarkably similar to those present in *Chambers* v. *Maroney* (1970), 399 U.S. 42, where the defendants were arrested while

riding in an automobile which had been stopped by the police in a dark parking lot in the middle of the night. After the defendants had been arrested, the automobile was taken to the police station where it was searched. The officers had probable cause to search, but they neglected to obtain a warrant. After discussing the constitutional distinctions between the search of an automobile and the search of a person's residence, the Court concluded that the warrantless seizure of the car and the warrantless search conducted at the police station were entirely valid under the facts and circumstances of that case.

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." 399 U.S. at 51, 52.

In the case at bar, the car was stopped along a highway at night. Officer Jackson had probable cause to believe that the

automobile contained stolen property. Under *Chambers* v. *Maroney, supra,* an immediate search would have been permissible. Also, see *Carroll* v. *United States, supra.* Furthermore, *Chambers* makes it quite clear that where an immediate search may be impractical or perhaps unsafe, and where it would serve the owner's convenience and safety of his car, the police can seize the car and transport it to the station house where a warrantless search may be conducted. The facts in this case fall squarely within the ruling in *Chambers,* and we conclude, therefore, that the search at the police post was valid. It necessarily follows that the items seized during the search were admissible at trial.

Counsel for appellant also contends that the State's failure to comply with the trial court's order to produce a list of *all* items seized as a result of the arrest and subsequent search should therefore render *all* items seized inadmissible at trial. The list furnished by the State did not include the automobile in which the appellant was a passenger. However, the seizure of the automobile can scarcely be considered to be a fact "unknown" to the defense. Also, the State failed to offer in evidence Exhibit No. 11, the prosecutor stating that the exhibit was "not part of this case." Nowhere is it disclosed what Exhibit No. 11 was, and, more importantly, appellant has failed to indicate how, or in what way, the exhibit was material or relevant to this case. Appellant merely urges this Court to assume that Exhibit No. 11 was an item seized by the State, and that the disclosure of this item to the appellant would have been of significant value to the defense. We are of the opinion that such an argument is entirely too speculative, and is, therefore, without merit.

Appellant next claims that the State should not have been permitted to call two witnesses to testify at trial whose names were not disclosed to the appellant in the list of witnesses until the morning of the trial when the list was amended. In permitting the State to amend, the

trial court offered to grant the appellant a one day continuance to enable him to investigate the two newly produced witnesses. The appellant, however, declined the continuance and continued to object, insisting that the trial should proceed but that the witnesses should not be permitted to testify. The objection was overruled, no continuance was granted, and the two witnesses testified at trial. In support of his claim that the ruling was erroneous, appellant relies on *Johns* v. *State* (1968), 251 Ind. 172, 240 N. E. 2d 60, a case involving similar facts, where it was stated:

"Under the doctrine outlined in *Bernard* v. *State* (1967), 248 Ind. 688, 230 N. E. 2d 536, it is clear that the trial court, when requested by the defendant in a criminal proceeding, has the duty to order the State to furnish the defendant with the names and addresses of those witnesses upon whom the State intends to rely in the prosecution of the case, unless the State is able to show a paramount interest in non-disclosure. Only a showing by the State that disclosure of the identity of the witnesses would subject them to harassment, would endanger their physical well being or the well being of their family or friends, or would facilitate perjury is sufficient to constitute a paramount interest as contemplated in *Bernard*. *Norton* v. *Superior Court* (1959), 173 Cal. App. 2d 133, 343 P. 2d 139. The purpose of the *Bernard* doctrine is to insure justice and fairness in criminal poceedings, and it is axiomatic that an accused is not justly and fairly tried when his counsel is compelled to maneuver in a factual vacuum. Nor is fairness and justice enhanced when convictions are gained through surprise, or by the prosecution misleading the defense. . . .

*"There is no doubt that appellant, by failing to move for a continuance when the witnesses were called, failed to pursue his proper remedy.* However, this Court cannot, and should not, look with equanimity upon a blatant disregard of a court's order by the State in a criminal proceeding, particularly where the defendant's life is at stake. Had the State, prior to trial, sought a rehearing on defendant's motion, or made a good showing of inability to comply with the order, it would not now be in a position of having deliberately disobeyed the order of the trial court. We agree with appellant's counsel in their argument that it is fundamentally a denial of due process of law as

guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States to lead a defendant to believe that he has been afforded the right of discovery, and then permit the State of Indiana, in violation of an order of court, to present, during its case in chief, surprise witnesses whose testimony substantially added to the weight of the State's case." 251 Ind. at 179, 180, 240 N. E. 2d at 64, 65. (our emphasis)

In the case at bar, the State, failed to show a paramount interest in non-disclosure of the identity of the witnesses. It is also quite clear that the witnesses were important to the State's case. However, this Court made it abundantly clear in *Johns* v. *State, supra,* that the proper course of action for a defendant in such cases is to move for a continuance. Also, see *Pinkerton* v. *State* (1972), 258 Ind. 610, 283 N. E. 2d 376. Here, not only did the appellant fail to seek a continuance, he expressly refused one. The two witnesses, John Pyle, the manager of the tire store, and Floyd Grassinger, a co-owner of the store, should surely not be considered as "surprise" witnesses since the appellant was well aware that the prosecution would have to establish an unauthorized entry into the store plus have the merchandise identified as being stolen. It appears that the one day continuance offered by the trial court would have been sufficient to assure fundamental fairness to the appellant under the facts of this case. As we stated in *Pinkerton* v. *State, supra:*

"As we have said many times, although the defendant is entitled to a fair trial, [he] is not entitled to a perfect one. We fail to see where the trial court failed to compensate properly for the failure of the State, and we think that the defendant merely seeks to take unrealistic advantage of error that has caused [him] no harm." 258 Ind. at 618, 283 N. E. 2d at 381.

Appellant's final assignment of error relates to the granting of the State's Motion to Reopen Its Case in Chief for the purpose of introducing certain exhibits into evidence. The motion to reopen was made *before* the appellant moved for a directed verdict. In *Maxey* v. *State* (1969),

251 Ind. 645, 244 N. E. 2d 650, the State was permitted to reopen its case to prove venue *after* the defendant had moved for a directed verdict. In upholding the ruling of the trial court, we stated:

"It has long been held that the action of a trial court in allowing a party to reopen its case after it has rested is a matter of discretion for the court, and, unless clear abuse is shown, this court will not interfere with such a decision by the trial court." 251 Ind. at 651, 244 N. E. 2d at 654.

Appellant contends that since the introduction of the evidence was necessary to cure a failure of proof, it was an abuse of discretion to sustain the State's motion to reopen. We do not agree. In nearly all cases where a party moves to reopen its case, it will be for a purpose which is vital to the success of the case. There was certainly nothing unfair in permitting the presentation of all of the facts relating to the crime for which the appellant was charged.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

Arterburn, C.J., DeBruler, Givan and Prentice, JJ., concur.

NOTE.—Reported in 284 N. E. 2d 738.