WILLIE BRYANT A/K/A WILLIAM BRYANT *v.* STATE OF INDIANA.

[No. 2-273A51. Filed July 31, 1973.]

200

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

HOFFMAN, C.J.—This appeal is from a judgment following a trial by the court convicting Willie Lee Bryant of the crime of robbery and sentencing him to be imprisoned for not less than ten nor more than 25 years.

On appeal, Bryant alleges error in the following respects: 1) the evidence was insufficient to establish all of the elements of the crime of robbery or to establish the appellant's identification and is therefore insufficient to sustain the conviction of the appellant and is contrary to law; and 2) the court erred in admitting State's Exhibits "A" and "B" which were not properly identified or connected to the alleged offense and which were obtained through an unlawful search and seizure.

The factual background necessary to resolve such allegations of error may be summarized from the record before us as follows:

Irvena Goger, the owner of Goger's Corner, a variety-grocery store, at 3101 West 10th Street, in Indianapolis, Marion County, Indiana, testified, on direct examination, that at approximately 9:30 A.M., on January 14, 1972, she observed Bryant as follows:

"Well, he kept standing in the door for about half-three quarters of an hour . . . I thought he was waiting on a bus. Kept going in and out . . . in and out. And finally . . . I don't know . . . I was busy working . . . there was nobody . . . no customers in there and I was busy doing something or other and I heard a movement and I looked up and he was standing there right next to me with a gun."

She further testified as follows:

"Q. And you say that he did say something to you?
"A. He told me to open up the cash register.
"Q. Did he say anything else?
"A. Well at that time not, then after he got what he wanted he made me . . . he told me to go in the back room and shut myself up.
"Q. And did you do that?
"A. I did.

\* \* \*

"Q. You stated that you did open the cash register?
"A. I opened it for him, I wasn't going to argue against a gun.
"Q. Was there anything in it? In the cash register?
"A. Around $83.00 . . . $84.00."

Mrs. Goger notified the police and Police Officer Holder was summoned to investigate the robbery. She described the robber to Officer Holder as being very short, with very good diction, a mustache and a black 22 calibre revolver.

Later, Officer Holder saw a Northside taxicab eastbound on West Walnut Street. Officer Holder testified that the passenger in the rear seat of the cab resembled the description he had been given by Mrs. Goger. Officer Holder testified,

on direct examination, that he followed the taxicab and observed that Bryant "turned and looked out the rear window several times. The cab continued east on Walnut er . . . St. Clair Street while he was doing this and when he got to Pershing, correction . . . Sheffield, the cab turned south on Sheffield . . . ah . . . Mr. Bryant continued to look out the rear window. When he got to the alley just north of Michigan Street, the cab turned right to go back west in the alley and made a turn through a vacant lot there and went back north on Sheffield ah . . . towards 10th Street. I followed the cab onto 10th Street and as well as radioed for some other cars. During the entire course of this trip Mr. Bryant kept turning and looking out the rear window. When the cab got to 10th Street I stopped the cab just west of Sheffield on 10th and asked Mr. Bryant to get out of the cab."

Officer Holder then frisked Bryant and found $84 in currency and $4.05 in change "stuffed" in Bryant's pockets. Officer Holder placed Bryant in the police car, went back and searched the taxicab and found a pistol under the front seat on the right side. Bryant was then taken back to Goger's Corner where he was identified as the robber by Mrs. Goger. Mrs. Goger also identified the gun as the one used in the robbery.

The material elements of the crime of robbery are stated in *Jackson* v. *State* (1971), 257 Ind. 589, 275 N.E.2d 538, at 540, as "(1) an unlawful taking, (2) from the person of another, (3) any article of value, (4) by violence or putting in fear." Bryant argues the element of "violence or putting in fear" is not established.

It has been held that the mere appearance that the defendant was in possession of a gun will be sufficient to establish the "violence or putting in fear" element of robbery. *Lewis* v. *State* (1969), 252 Ind. 454, 459, 250 N.E.2d 358; *Cross, Jr.* v. *State of Indiana* (1956), 235 Ind. 611, 137 N.E.2d 32.

Here, not only was Mrs. Goger aware of the gun, but she testified, "I wasn't going to argue against a gun." There was sufficient evidence of the "violence or putting in fear" element.

Bryant next argues that the identification was insufficient to support the conviction.

A conviction may be supported by the identification by a single witness. *Bryant* v. *State* (1972), 257 Ind. 679, 278 N.E.2d 576.

Here, Bryant was positively identified as the robber by the victim of the crime. The weight of her testimony was for the trier of fact. The identification of Bryant by Mrs. Goger is sufficient to support the conviction.

Bryant next argues that State's Exhibits "A" and "B", the gun and the money taken from Bryant after the taxicab was stopped, were erroneously admitted into evidence.

Initially we must determine the validity of the search of Bryant and the seizure of the gun and money by the police officer.

As a general rule the police must, wherever and whenever practicable, obtain advance judicial approval of searches and seizures through the "warrant procedure." However, we are here dealing with a rubric of police conduct recognized as an exception to the requirement of obtaining a search warrant when exigent circumstances demand swift action. Even then, the actions of a police officer must be measured against the objective standard:

> "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry* v. *Ohio* (1968), 392 U.S. 1, at 21-22, 88 S. Ct. 1868, at 1880, 20 L. Ed. 2d 889.

Where exigent circumstances prevent the obtaining of a warrant, the law permits the arrest of a person without a

warrant where a reasonable man under the same circumstances would have had probable cause to believe that a person had committed, or is committing, a crime. *Stuck* v. *State* (1970), 255 Ind. 350, 264 N.E.2d 611, 614. In such cases a search may be conducted incidental to the lawful arrest if conducted of the arrestee's person and the area from within which he might gain possession of a weapon or destructible evidence. *Chimel* v. *California* (1969), 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685; *Ramirez* v. *State* (1972), 153 Ind. App. 142, 286 N.E.2d 219, 32 Ind. Dec. 310.

Also, a police officer may, in *appropriate circumstances and in an appropriate manner*, approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. *Terry* v. *Ohio, supra* (1968), 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889.

In *Adams* v. *Williams* (1972), 407 U.S. 143, 145, 146, 92 S. Ct. 1921, at 1923, 32 L. Ed. 2d 612, it is stated:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* [392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889] recognizes that it may be the essence of good police work to adopt an intermediate response. See *Id.*, at 23, 88 S. Ct. at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Id.*, at 21-22; see *Gaines* v. *Craven*, 448 F. 2d 1236 (CA 9 1971); *United States* v. *Unverzagt*, 424 F. 2d 396 (CA 8 1970).

"The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer

or to others,' he may conduct a limited protective search for concealed weapons. *Id.*, at 24. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose. *Id.*, at 30, 88 S. Ct., at 1884." (Footnote omitted.)

Under *Terry* and *Adams* the determination of whether a "stop", if made with less than probable cause, is reasonable, is a two-step process. The first step is to determine whether, under the circumstances presented, a man of reasonable caution would have believed the "stop" was warranted in the interest of effective law enforcement. The second step is to determine whether the officer was justified, under the "reasonable man concept", in believing the individual whose behavior he is investigating is armed and dangerous.

If the answer to both of the above questions is "yes", there is "a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer." *Terry*, at 27 of 392 U.S., at 1883 of 88 S. Ct. If the answer to either of the above questions is "no", any evidence resulting from the "frisk" is not admissible into evidence. In answering both questions, the need to search or seize must necessarily be balanced against the invasion which the search or seizure entails. *Terry* v. *Ohio, supra.*

The foregoing reasoning is not novel in Indiana. Our Supreme Court has heretofore applied similar reasoning when faced with a "search and seizure" situation. See *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738. *Luckett* is also relevant to the instant case

in that it clarified the distinction between a "technical arrest" and a "formal arrest." Any time the freedom of a person to move about is restrained by a police officer, the result may technically be called an "arrest", even if based on less than probable cause. *Luckett* v. *State, supra.* The important point is not the nomenclature used to describe the activity, *i.e.,* "stop and frisk", or "investigatory detention", or "arrest", etc. The important point is that the Fourth Amendment applies whenever a person is "seized". To be lawful, any "search and seizure" must fall within the constitutional confines of reasonableness hereinabove enunciated.

After *Terry,* States were free to adopt stricter standards of when police conduct may intrude into the privacy of citizens. Our Legislature enacted the following statutes in 1969:

IC 1971, 35-3-1-1, Ind. Ann. Stat. § 9-1048 (Burns Cum. Supp. 1972), provides as follows:

> "Officer's duty to interrogate persons in public place—Limitations—Exemption from civil liability.—When a law enforcement officer in a distinctive uniform, or in plain clothes after having identified himself as a law enforcement officer reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed by any person, observed in a public place said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action. Said stopping and inquiry shall be limited to those matters under the enforcement jurisdiction of the particular officer and when conducted within the limits specified herein shall not constitute official custody or arrest and shall not constitute grounds for civil liability for false arrest or false imprisonment."

IC 1971, 35-3-1-2, Ind. Ann. Stat. § 9-1049 (Burns Cum. Supp. 1972), provides as follows:

> "Search of outer clothing—Disposition of weapons found. —When a law enforcement officer has stopped a person

for temporary questioning pursuant to the preceding section and he further reasonably concludes in light of his experience that the person with whom he is dealing may be armed and presently dangerous, he shall be entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him. If the officer discovers a weapon he may seize it and if it is unlawfully possessed, said weapon shall be held for evidence in the prosecution of the appropriate criminal charge. If such person is not arrested and charged, said weapon shall be returned to him."

In the instant case, probable cause for the arrest may be lacking, however, the similarity of the appearance of Bryant to the description of the robber, his nervous behavior, the circuitous route of the taxicab, and the time and spatial relation of the "stop" to the crime would have warranted a man of common caution in stopping the taxicab and making further investigation. Moreover, the knowledge of the officer that the robber was armed with a pistol justified a limited search of the passenger of the taxicab for weapons.

The scope of such search is described in *Terry,* at 17-19 of 392 U.S., at 1878 of 88 S. Ct., as follows:

"This Court has held in the past that a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope. Kremen v. United States, 353 U.S. 346, 77 S. Ct. 828, 1 L. Ed. 2d 876 (1957); Go-Bart Importing Co. v. United States, 282 U.S. 344, 356-358, 51 S. Ct. 153, 158, 75 L. Ed. 374 (1931); see United States v. Di Re, 332 U.S. 581, 586-587, 68 S. Ct. 222, 225, 92 L. Ed. 210 (1948). The scope of the search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible. Warden v. Hayden, 387 U.S. 294, 310, 87 S. Ct. 1642, 1652 (1967) (Mr. Justice Fortas, concurring); * * *." See also: *Paxton, et al.* v. *State* (1970), 255 Ind. 264, 263 N.E.2d 636; *Sibron* v. *New York* (1968), 392 U.S. 40, 88 S. Ct. 1889, 20 L. Ed. 2d 917.

In the instant case, the scope of the "frisk" is not challenged, however, we note in passing that a search lawful in both its inception and its scope may reveal incriminating evidence of a size or shape which would remind a person of ordinary prudence of the presence of a weapon or other dangerous instrumentality.

Here, the "frisk" revealed items contained in the pockets of Bryant. Such items were later revealed to be $84 in currency and $4.05 in change. The suspicions of the officer should have been sufficiently aroused for him to believe that the lumps resulting from that amount of money might have been a dangerous instrumentality. The scope of the search was not unreasonable.

With regard to the seizure of the gun, the following language from *Corrao* v. *State* (1972), 154 Ind. App. 525, 290 N.E.2d 484, at 485-486, is appropriate:

> "A warrantless search of a vehicle is not unconstitutional provided the seizing officer has reasonable and probable cause to believe that the contents of the vehicle offend against the law. Carroll v. United States (1925), 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543; Chambers v. Maroney (1970), 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419; Preston v. United States (1964), 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed. 2d 777; Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S. Ct. 2022, 2034, 29 L. Ed. 2d 564; Paxton v. State (1970), 255 Ind. 264, 263 N.E.2d 636."

The touchstone of the authorities relied upon in *Corrao* relates to the mobility of an automobile. See: *Paxton* v. *State, supra,* and *Chambers* v. *Maroney* (1970), 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419. The problem of mobility is especially acute here because the vehicle in question was a public conveyance which would have continued on its way after defendant was taken into custody.

The similarity in the amount of the money contained in the pockets of Bryant with that taken in the robbery, along with

the description of the robber and the totality of the circumstances under which the "stop" was made gave rise to probable cause for the arrest. Moreover, the above circumstances, when coupled with the testimony of the police officer that during the progress of the chase he had seen Bryant lean down "under the seat", gave rise to probable cause for the officer to search the taxicab.

Bryant contends that the gun taken from the taxicab was not sufficiently identified. The evidence contained in the record before us shows that Mrs. Goger identified the gun taken from the taxicab as the one used in the robbery. Officer Holder identified the gun admitted into evidence as the one taken from the taxicab. The gun was sufficiently identified.

Bryant finally contends that the money admitted into evidence was not identified as that taken in the robbery.

Notwithstanding the similarity of the amount taken and the amount found in Bryant's possession, we recognize an inherent difficulty in showing unmarked money which was stolen to be the same as that which was subsequently recovered. Here, the money was circumstantial evidence of the identity of the robber. Since Bryant was positively identified by the victim of the crime any error in the admission of the money was harmless.

The judgment of the trial court convicting Willie Lee Bryant of robbery is affirmed.

Affirmed.

Sharp and Staton, JJ., concur.

NOTE.—Reported at 299 N.E.2d 200.