MARVIN HOLLIS SEXTON *v.* STATE OF INDIANA.

[No. 673S127.  Filed December 16, 1974.]

*Jack Quirk,* of Muncie, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry Sitler,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged by indictment with Murder in the First Degree. Following pleas of "not guilty" and "not guilty by reason of insanity," he was convicted by a jury of Murder in the Second Degree and sentenced to imprisonment for a term of from fifteen (15) to twenty-five (25) years. Sixteen alleged errors were assigned by his motion to correct errors, six of which were specifically waived on appeal.

ISSUE I. The trial court denied the defendant's motion for a bifurcated trial, separating the general plea of "not guilty" and a special plea of "not guilty by reason of insanity." We have recently ruled upon this issue in *Hester* v. *State* (1974), 262 Ind. 284, 315 N.E.2d 351, wherein we stated at p. 353:

> "We hold that although a plea of insanity may be viewed as an admission of the commission of the criminal act and may in other ways ease the State's burden of proof, it does not, in the absence of other compelling circumstances, entitle a defendant to a bifurcated trial. We do not view the defendant's alleged reason for requesting the two-stage trial as a circumstance giving rise to probable and substantial prejudice such as required a variance from the established and normal single trial procedure."

ISSUE II. A State's witness drew a diagram of the barroom wherein the homicide occurred and the victim was

found. Upon cross-examination, the witness acknowledged that the diagram was made two or three days after the homicide occurred and that he did not know whether or not the premises had been altered between the time of that occurrence and the time the diagram was made. Defendant objected to the admission of the exhibit into evidence upon the basis that a proper foundation for it had not been laid. He contends that there had been no testimony that the diagram was a "true and accurate" representation of the scene at the time of the homicide. However, the record reveals that the witness answered the following question in the affirmative: "* * * Did that diagram indicate the way the Showboat Tavern looked on July 18, 1965, as best you recall? * * * Would you say that State's Exhibit No. 1 * * * is a fair and accurate representation of how the Showboat Tavern appeared on July 18, 1965?" We hold the foundation adequate to support the introduction of the exhibit.

The purpose of this type of evidence is to assist witnesses in articulating what they viewed in order that the jury may relate their testimony to the physical surroundings and to the testimony of other witnesses and thus consider the testimony of each witness in context. Such an exhibit need not be a perfect representation. In this regard, we have held that a photograph where the homicide took place was admissible, although it was not made at the time the crime was committed but was taken before there were any substantial changes. *Hawkins* v. *State* (1941), 219 Ind. 116, 128, 37 N.E. 2d 79.

ISSUE III. Defendant objected to the introduction into evidence of a photo of the decedent taken shortly after her throat was cut. Three prior exhibits were also photographs taken at the scene shortly after the homicide and depicted the position of the corpse from various positions in the room. The exhibit objected to was a close-up of the victim and depicted the extent and location of the mortal wounds. The basis of the objection was

that it was repetitious and gruesome and served no purpose other than to inflame the jury.

We find that the situation in the case at bar has been treated at length in *Kiefer* v. *State* (1958), 239 Ind. 103, 153 N.E.2d 899. In that case, a total of six photographs of the body of the deceased were admitted into evidence. The defendant therein objected to the admission of five of the photographs. In holding that three of the photographs had been properly admitted, the Court stated:

> "* * * Even though these photographs representing Exhibits Nos. 10, 11 and 12 may have been, to some degree, repetitious and cumulative, and are gruesome in character, they serve to elucidate and explain relevant oral testimony given at the trial and they were properly admitted for the purpose of showing fully the scene of the crime, the nature of the wounds of the victim, and the condition of the basement immediately after the crime was committed." 239 Ind. at 108.

We find no error upon this issue.

ISSUE IV. A large pocket knife found open and lying on the floor near the victim's body was admitted into evidence over Defendant's objection that it was not relevant because it had not been shown to be connected with the incident. This argument is specious in view of eyewitness testimony that the defendant had slashed the decedent's throat with a large pocket knife which was subsequently knocked from the defendant's hand and fell to the floor. The knife was relevant circumstantial evidence corroborating the witness' testimony.

ISSUE V. Defendant next asserts that the court erred in permitting Mr. Rohrdan to testify as to the cause of decedent's death over his objection that he had not been qualified as a medical expert. Counsel has not favored us with citation of authority limiting evidence of the cause of death to testimony from expert medical witnesses; and we feel no compunction to write upon that subject. We

note in passing, however, that the witness was the deputy county coroner at the time of the decedent's death and that he examined her body in that capacity. Also, as a funeral director, he embalmed the body. He described her wounds, including a severed jugular vein.

Mr. Peters, a Muncie police officer, was employed part time as a "bouncer" by the management of the tavern where the homicide occurred. He was serving in that capacity at the time of the homicide, and he testified that he saw the defendant slit the decedent's throat and that she was dead when she hit the floor. Under these circumstances, it is ludicrous to assert that the jury did not have competent and probative evidence from which to find that the decedent died as a result of the wounds inflicted by the defendant.

ISSUE VI. Defendant assigns as further error the admission into evidence of inculpatory statements made by him during custodial interrogation, over the objection that there had not been an adequate showing that he had knowingly and intelligently waived his constitutional right to remain silent. Although the interrogation took place prior to the decision in *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, the trial did not occur until after the *Miranda* decision was handed down. It is therefore applicable to this case. *Jenkins* v. *Delaware* (1969), 395 U.S. 213, 89 S. Ct. 1677, 23 L. Ed. 2d 253; *Johnson* v. *New Jersey* (1966), 384 U.S. 719, 86 S. Ct. 1772, 16 L. Ed. 2d 882.

We decline to treat the theoretical merits of this contention, because there is no indication that the evidence complained of was injurious to the defendant. The evidence consisted of statements from which it could be reasonably inferred that the defendant killed his wife. Evidence of the same or similar statements went to the jury unobjected to by testimony of other witnesses. Further, there was eyewitness testimony that the defendant re-entered

the Tavern, after having once been ejected for threatening the decedent, came up behind her as she walked down an aisle, grabbed her by her hair, pulled her head back and slashed her throat several times with a knife. The testimony in question, therefore, was merely cumulative, and not decisive of guilt. *Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860; *Turner* v. *State* (1972), 258 Ind. 267, 280 N.E.2d 621; *Jackson* v. *State* (1971), 257 Ind. 477, 275 N.E.2d 538.

The admission of improper evidence which tends only to disclose a fact which is clearly proved by other legitimate and uncontroverted evidence is harmless error. *Crim, a/k/a Miller* v. *State* (1971), 257 Ind. 51, 53, 272 N.E.2d 85, cert. denied 405, U.S. 990, 92 S. Ct. 1254, 31 L. Ed. 2d 456.

Reversal may not be predicated upon the erroneous admission of evidence when evidence having the same or greater probative value has been admitted without objection or without contradiction. *Williams* v. *State* (1973), 261 Ind. 385, 304 N.E.2d 311; *Boles* v. *State* (1973), 259 Ind. 661, 291 N.E.2d 357; *Easton* v. *State* (1972), 258 Ind. 204, 280 N.E.2d 307.

ISSUE VII. Defendant had, at some time prior to his arrest, been represented by Mr. McClellan, who in the interim had become the prosecutor and was acting as such during the interrogation of the defendant following his arrest. It is the defendant's position that, in order to render the prosecutor's testimony admissible, there was an additional burden upon the State to show that the defendant knew, at the time of the interrogation, that the prosecutor was no longer his attorney but an adversary. We need not meet this argument, which is nothing more than a generalization that under such circumstances, accused persons might be misled or confused. It is clear from Mr. McClellan's testimony that the defendant knew that Mr. McClellan was representing the State, that he knew that he was entitled to counsel and that he declined Mr. McClellan's offer to see

that such counsel was provided. Again, the issue is moot, because the evidence so admitted was merely cumulative, there being other substantial and direct evidence of the facts evidenced by the testimony of Mr. McClellan.

ISSUE VIII. Over the defendant's objection that the witness was not qualified "* * * to interpret terms in the legal sense * * *," a State's witness was permitted to answer the question "* * * Is a neurosis a legal disease?" The witness answered in the affirmative. He was a court appointed psychiatrist who had examined the defendant. He had previously testified, on direct examination by the court, that in his opinion, at the time the defendant killed his wife, he did not have the capacity to understand and appreciate the wrongful nature of his act and did not have the capacity to conform his acts to the standards and requirements as set out by law. Although we do not see the cases cited by the defendant as authority for his position, we agree that the question was improper. We do not perceive any harm therefrom, however. In fact, its effect, if any, could only have been beneficial to him, inasmuch as it indicated that a mere neurosis could serve as the foundation for a defense of insanity. We need not and do not pass upon this question, except to state that the matter cannot be so neatly generalized. In our opinion, the answer of the witness, if accepted by the jury as the law of the land, increased the State's burden upon the issue of insanity rather than to have reduced it.

ISSUE IX. Defendant's assigned errors 9 and 10 challenge the sufficiency of the evidence and are predicated upon Issue V which related to the showing of the cause of death. Determination upon that issue is determinative here.

We find no reversible error, and the judgment of the trial court is affirmed.

Givan, C.J., Arterburn and Hunter, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 319 N.E.2d 829.