MAURICE CAINE *v.* STATE OF INDIANA.

[No. 2-174A49. Filed March 10, 1975.]

*David M. Adams, Castor, Richards & Adams,* of Noblesville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, for appellee.

LOWDERMILK, J. — Defendant-appellant, Maurice Caine (Caine) was charged in three counts with (1) armed robbery, (2) automobile banditry and (3) conspiracy to commit a felony, to-wit, robbery. Before trial Count II, automobile banditry, was dismissed and the case was tried to a jury on Counts I and III.

Caine was found guilty of theft under Count I and was also convicted on Count III, conspiracy to commit a felony and the jury assessed his punishment at a fine and imprisonment as prescribed by statute.

The facts of the case are as follows:

Peggy Dilk was an employee of the MaJik Market at 750 East 106th Street in Hamilton County, on May 8, 1973. She testified that at apporoximately 11:00 o'clock P.M. Caine entered the store with another man who drew a gun and demanded money. Caine took money out of the cash register, two cartons of Camel filter cigarettes from the counter, and the pair also took Winston cigarettes, two packs of batteries and two pizzas.

Terry Rickard, a resident of 107th and Bellefontaine two blocks from the MaJik Market on said date at sometime after 11:00 P.M. heard a commotion and observed an automobile stuck in her yard, followed by two figures getting into a medium sized, dark colored car, which was driven away.

Marlene Littleton, Mrs. Rickard's mother who resided with her, heard the same commotion, and overheard voices from the yard state they would come back for the car later.

She called the police and when they arrived they were given the information she had overheard.

Officer Prince of the Indiana State Police at the time was on duty and received two dispatches, one involving the armed robbery at the store and the second concerning the abandoned vehicle at 107th and Bellefontaine. Mrs. Littleton told Prince that the abandoned car's occupants intended to return and that there were three people involved who left in a dark colored car.

Officer Prince was standing outside the abandoned automobile and observed a pizza laying on the front seat. Deputy Sheriff Castor who assisted in the investigation found a carton of Camel filter cigarettes with "MaJik Market" stamped on the box laying on the ground near the car. A description of the stolen merchandise had been dispatched minutes prior to the officers' discovery of the pizza and cigarettes. Officer Castor discovered the registration of the car in the abandoned car's glove box which showed Anna Louise Caine was the owner.

Deputy Sheriff Steve Sell, in a preliminary investigation of the market robbery, obtained a description of the suspects and the items taken from the store. He also learned that a weapon had been involved in the robbery.

Deputy Sell went to the location of the abandoned automobile and there observed the pizza and the carton of Camel filter cigarettes found in and about the abandoned car. Officer Sell informed Officers Prince and Castor of the information he had received regarding the robbery of the MaJik Market.

Next to appear at the scene of the abandoned car was State Trooper James Rhinebarger, who was informed by Officer Prince together with Officer Sell that three people were believed to be involved with the abandoned vehicle and were overheard to say they would return for it.

At approximately 1:00 o'clock A.M. the police, still at the abandoned car, observed three subjects drive by in a dark green Chevrolet. There were few cars on the road at that hour and the Chevrolet matched the description of the automobile seen earlier and further there were three occupants at the time the police observed it. The green car was traveling at approximately 2 to 5 miles per hour with all three occupants observing the police at the time although the main activity had died down and no police flashers were on. The Chevrolet turned in a direction of 180° away from the police and began accelerating. The police immediately gave chase.

Officer Rhinebarger stopped the green colored car by driving in the middle of an intersection. In response to a question by Officer Rhinebarger one of the occupants stated that they were in the area to pick up a car which had been stuck in the mud. None of the suspects had been searched at that time. The police officers then asked the three occupants for their drivers' licenses, from which they determined one of the passengers was Caine. The police then proceeded to have the three passengers in the car remove themselves therefrom. Following this, the three occupants were searched.

Officer Rhinebarger then searched the green colored automobile. He testified that he had been informed that a gun had been involved in the robbery and was concerned for his own safety and he discovered a revolver under the front seat which he then confiscated. Afterward Caine was searched and found to have a large amount of money on his person and the suspects were taken back to the MaJik Market where Peggy Dilk identified Caine as one of those who had robbed her earlier in the evening.

The FIRST ISSUE raised by Caine in his motion to correct errors was that the court failed to grant Caine's motion to discharge on the basis of a failure to have a speedy trial. Ind. Rules of Procedure, Criminal Rule 4(B) provides that when a defendant is held in jail and moves for an early trial he shall

> ". . . be discharged if not brought to trial within fifty (50) judicial days [now seventy (70) calendar days] from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such fifty (50) judicial days *because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule.*" (Emphasis added.)

The trial was set for September 24, 1973, which was the 50th judicial day following Caine's motion for a speedy trial. On the trial date Caine filed a motion to suppress and trial was postponed until September 25 by the court on its own motion due to a criminal trial then in progress. On September 25th the court began hearing evidence on Caine's motion to suppress. Evidence was heard and not being completed the hearing was continued to a later date. Trial was commenced before a jury on September 26, 1973, was recessed, and in the absence of the jury the court completed the hearing on Caine's motion to suppress and at the conclusion of the same trial was resumed before the jury.

Caine precipitated the two day delay by waiting until the date set for trial before submitting his motion to suppress. The State contends that because of this Caine is not entitled to discharge under CR. 4(B).

It goes without question that on September 24, 1973, the trial was postponed until September 25 by the court on its own motion "due to a criminal jury trial in progress." It was then necessary to hear Caine's motion to suppress evidence and the actual trial did not commence on September 25 as the court was hearing evidence on Caine's motion to suppress.

Caine further insists that the State did not, at least ten days before the trial, file a statement of congestion of the trial calendar as provided and required within CR. 4(B).

It is our opinion that the Rule specifically protects the rights of the public as well as the defendant's rights where a speedy trial is requested and cannot be granted because the court's docket is overcrowded and the trial cannot be had within the time limitation. Nothing would have been gained by the Prosecuting Attorney filing a motion for a continuance more than ten days before September 24, 1973, in this case, nor would anything more have been gained had he filed an emergency affidavit less than ten days before September 24, 1973, showing that the court's docket was so full the case could not be commenced on that date.

The court takes judicial notice of its own docket and the cases that are to be disposed of. Experience teaches us that many trials are commenced, expecting to last a limited number of days, and with no fault of anybody may overrun a day or two or even a week. The trial court just couldn't get the case of State v. Worsley it was trying disposed of before September 24, 1973. It certainly was within the powers of the court to determine that fact and to postpone the trial of the case at bar until the following day when the court had time to handle it.

Our Supreme Court, in *Harris* v. *State* (1971), 256 Ind. 464, 269 N.E.2d 537, in discussing Rule CR. 4 noted at the time a criminal trial was set the trial date was at odds with CR. 4(A) and indicated that the delay was necessary due to the court's jury trial schedule. The next action taken was six days short of seven months from the date of appellant's arrest. The court, in *Harris*, in dismissing the guarantee to a speedy trial, said it was equally clear that one circumstance that was recognized by the rule, excusing trial within a six months period is where the trial docket is congested and the trial cannot be had within the time allotted. Speaking further, the court said:

". . . This being the case, we are unable to say that appellant is entitled to discharge solely on the basis that trial was continued beyond the six month period at the instance of the trial judge and not the prosecutor. Whether the trial judge *or* the prosecutor makes the motion would seem irrevelant when considered in light of the rule's objective and the right sought to be protected. We fail to see any prejudice accruing to appellant as a result of the manner in which the setting of trial was here conducted nor does appellant show any." (Original emphasis.) 256 Ind. at 466.

It is our opinion that the court correctly ruled on issue one.

The SECOND ISSUE raised by Caine is whether it was error for the trial court to overrule his motion to suppress all evidence. In overruling Caine's motion to suppress, the trial court found that:

(1) Defendant lacked standing to complain of the search of the automobile;

(2) The stopping of the automobile was reasonable within the standards of *Terry* v. *Ohio;*

(3) That there was probable cause for the arrest of Caine; and

(4) That the confrontation between Caine and witness Peggy Dilk was not unduly suggestive.

On appeal, however, Caine addresses only the first three findings of the trial court with regard to the motion to suppress evidence.

The first question which must be answered is whether the police officers were justified in stopping the automobile driven by Caine's sister, Ruby Wills, nee Lankford. In deciding this question we are presented with divergent case authority. See, *Bryant* v. *State* (1973), 157 Ind. App. 198, 299 N.E.2d 200; *Luckett* v. *State* (1972), 259 Ind. 174, 284 N.E.2d 738; and *Williams* v. *State* (1973), Ind. App., 299 N.E.2d 882, (Reversed, 261 Ind. 547, 307 N.E.2d 457). In our opinion, the proper approach to questions of this type is that set out in *Luckett, supra,* and *Bryant, supra.*

> In *Luckett, supra,* our Supreme Court stated, at page 179:
> ". . . [I]t appears to be well settled that there is nothing *automatically* unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking. . . . The constitutionality of such detention depends solely upon the reasonableness of the action taken by the police officer. . . ." (Original emphasis.)

The court went on to quote *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874 to establish a standard applicable to such contentions:

> " 'In order to determine the reasonableness of the intrusion into defendant's privacy by the police conduct in stopping the car we must examine the *facts known to the officers at the time they stopped the car . . .'.*" (Original emphasis.)

The Supreme Court then stated the question before them as follows:

> "Thus, the question before this Court is whether the facts known to Officer Jackson at the time he stopped the car were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropirate. . . ." (Emphasis added.)

The court went on to hold that the reasonableness of any investigation conducted during a period of brief detention is a matter to be decided on a case by case basis and that the detention there involved was proper. Finally, the court determined that *after* the car had been stopped and the officer

observed some watches on the back seat there was *probable cause* to arrest the defendant.

In *Bryant, supra,* this court (Third District) recognized:

". . . a police officer may, in *appropriate circumstances and in an appropriate manner,* approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. . . ." (Original emphasis.) 299 N.E.2d at 203.

The court's decision was supported by language from *Adams* v. *Williams* (1972), 407 U.S. 143, 145, 146, 92 S.Ct. 1921, at 1923, 32 L.Ed.2d 612:

" 'The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* [392 U.S. 1, 88 S.Ct. 1868, 20 L.E.2d 889] recognizes that it may be the essence of good police work to adopt an intermediate response. . . . A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. . . .' "

The specific question therefore is whether the facts and circumstances known to the officers in the case at bar were sufficient to warrant a man of reasonable caution in believing an investigation was proper, even though there was not probable cause to arrest *at that point in time.*

In the case at bar the police officers prior to stopping the Wills automobile were aware of the MaJik Market robbery and all information discovered subsequently thereto as set out above. On the basis of all the above facts it is our opinion that the officers in the case at bar were justified in stopping the Wills automobile. It is clear that the officers did not have authority to stop every dark or dark green, medium sized automobile. However, given the specific circumstances here involved, particularly the fact that the suspicious activity occurred within a short time after the rob-

bery and near the scene of the robbery, the conduct of the officers was proper.

After stopping the Wills automobile the officer requested identification from all the passengers—a procedure which we do not consider unreasonable. We are of the opinion that after this reasonable request revealed that Caine was one of the occupants the police had probable cause to arrest Caine in connection with the MaJik Market robbery. We reach this conclusion, relying in part on the following language from *Francis* v. *State* (1974), 161 Ind. App. 371, 316 N.E.2d 416, 418:

> "In our opinion the existence of probable cause for an arrest should be determined on the basis of the collective information known to the law enforcement organization as a whole, and not solely on the personal knowledge of the arresting officer. The police force is considered as a unit and where there is a police-channel communication to the arresting officer and he acts in good faith thereon, the arrest is based on probable cause when such knowledge and information exist within the department. . . ."

Clearly, the policemen who stopped the car knew of all the surrounding facts by way of radio dispatches and we feel this information in addition to the officers' personal experience and observations was sufficient to constitute probable cause.

Having determined there was proper cause to stop the automobile and probable cause to arrest Caine, it now becomes our duty to determine whether the evidence seized incident to that arrest was properly admitted into evidence. Caine objects to the finding of the revolver under the front seat of the automobile, and to the confrontation between himself and Peggy Dilk, an employee of the MaJik Market.

Caine was returned to the MaJik Market and confronted by the robbery victim, who identified him and who said that Caine's accomplice drew a revolver and pointed it straight at her head while demanding money.

The confrontation is objected to on the ground that it was the result of an illegal arrest. In his brief Caine does

not argue that the confrontation per se was improper and failing to argue the same in his brief he waived the question of improper confrontation. Ind. Rules of Procedure, Appellate Rule 8.3 (A) (7).

Assuming *arguendo* the revolver was improper evidence, the admission of such evidence would tend only to disclose a fact which was clearly proven by other legitimate and uncontroverted evidence and is therefore harmless error.

Our Supreme Court, in *Sexton* v. *State* (1974), 262 Ind. 554, 319 N.E.2d 829, 832, in discussing the admission of a murder weapon, i.e., a knife, into evidence said:

". . . The [revolver] in question, therefore, was merely cumulative, and not decisive of guilt. [Cases cited omitted.]

The admission of improper evidence which tends only to disclose a fact which is clearly proved by other legitimate and uncontroverted evidence is harmless error. [Cases cited omitted.]

Reversal may not be predicated upon the erroneous admission of evidence when evidence having the same or greater probative value has been admitted without objection or without contradiction. [Cases cited omitted.]" See, *Mitchell* v. *State* (1972), 259 Ind. 418, 287 N.E.2d 860.

Having determined that the revolver was merely cumulative evidence we need not address Caine's arguments concerning the seizure of the revolver, and its introduction into evidence.

The THIRD ISSUE raised by Caine is the court's failure to grant a motion for mistrial.

Prior to trial Caine filed a motion in limine and requested that the State be admonished not to mention Caine's prior criminal difficulties in the presence of the jury, which motion was sustained.

The Prosecutor, in the presence of the jury, asked defendant's sister, Ruby Wills, nee Lankford, on direct examination the following question:

"Have you ever heard Maurice planning any robberies prior to that date?"

Objection was immediately made by Caine, who at that time moved the jury be instructed and admonished to disregard the question, which motion was sustained and the court admonished the jury that it was the court's responsibility to pass on the admissibility of evidence elicited by questions and that:

". . . any question to which there is an objection which is sustained by the Court there is no answer received, or, if an answer is received it is stricken; so, of course, the answer cannot be considered by you as any evidence; and, in addition, the question itself is, of course, not any evidence nor are you to speculate on what the answer might have been had the witness been allowed to reply thereto."

Caine moved for a mistrial, which was denied.

Caine urges that the asking of the above question in the presence of the jury was in obvious and open defiance of the court's order in limine on the subject of other crimes.

We hold that in light of the court's prompt admonition to the jury to (1) disregard the question (2) that the question was not evidence, and (3) not to speculate on what the answer might have been if answered, the Prosecutor's question did not substantially contribute to the verdict. This is particularly true in light of other strong evidence of guilt presented at trial. The trial court did not err in overruling Caine's motion for a mistrial. *Sankey* v. *State* (1973), 157 Ind. App. 627, 301 N.E.2d 235, 238.

The FOURTH ISSUE is whether the trial court properly overruled Caine's motions for a directed verdict. In *State* v. *Overmyer* (1973), 155 Ind. App. 689, 294 N.E.2d 172, 173, this court stated:

" 'A directed verdict is only proper where there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible to only one inference in favor of the accused. . . .' "

Further, in *Holliday* v. *State* (1970), 254 Ind. 85, 257 N.E.2d 679, our Supreme Court stated:

"To avoid a directed verdict the State merely has to make out a prima facie case."

There was sufficient evidence for the trial court to overrule the motions for directed verdict.

The FIFTH ISSUE presented pertains to the giving and refusal of certain instructions.

Caine objects to the court's refusal to give to the jury his tendered Final Instructions 1 and 2.

Instruction No. 1 is on the law concerning personal confrontation with the accused and informs the jury that if they find the confrontation between the accused and any State's witness was unnecessarily suggestive and conducive to irreparable mistaken identification that the jury is to disregard such eye witness testimony.

Instruction No. 2 is also on confrontation and tells the jury if they find the confrontation was unduly suggestive to such witness that the accused was the perpetrator of the offense then the jury is to disregard any testimony which, as a result of such confrontation, identifies the accused as the individual who committed the offense.

Each of said instructions instructs the jury to disregard eye witness testimony if the confrontation between the accused and the State's witness was overly suggestive. Each of said instructions was adequately covered by the court's Final Instructions 12 and 13 as to the jury's duty in weighing the evidence. Said Instruction 1 and 2 go to the weight of one segment of the evidence to the exclusion of all other evidence and are, for that reason, as well as others, erroneous. In *Martin* v. *State* (1973), 260 Ind. 490, 296 N.E.2d 793, 796, our Supreme Court said:

"It is not error to refuse an instruction, the substance of which is adequately covered by instructions given."

The court correctly refused defendant's tendered Instructions 1 and 2.

State's Instruction No. 3 is objected to by Caine. That instruction defines conspiracy. Caine maintains that this in-

struction permits him to be convicted by a standard less than that provided by law; that the instruction permits a conviction on proof by a standard less than proof beyond a reasonable doubt.

We have viewed this instruction as a whole with all the other instructions and have determined said instruction is a correct statement of the law and that Caine has not been prejudiced by the giving of this instruction. *Adkins* v. *Elvard* (1973), 155 Ind. App. 672, 294 N.E.2d 160, 163; *Cato Enterprises* v. *Fine* (1971), 149 Ind. App. 163, 271 N.E.2d 146.

Caine objects to the court's Final Instruction No. 6, which instruction tells the jury that proof of existence of conspiracy need not rest solely on words giving rise to an express agreement but may be inferred from acts or conduct of persons accused done in pursuance of apparent criminal or unlawful purpose in common between them.

Caine urges error in that said instruction permits the jury to find the defendant guilty by inference and probability and misleads the jury and is not the law in Indiana and therefore is a mis-statement of the law.

The identical instruction was first given in the case of *Smith* v. *State* (1960), 241 Ind. 311, 170 N.E.2d 794 and subsequently approved in the case of *Haynes* v. *State* (1973), 155 Ind. App. 472, 293 N.E.2d 204, wherein this court held that the giving of said instruction was not error. See also *Samuels* v. *State* (1974), 159 Ind. App. 657, 308 N.E.2d 879. This court also now determines there was no error in the giving of the court's Instruction No. 6.

Finding no reversible error the judgment of the trial court is affirmed.

Robertson, C.J. and Lybrook, J., concur.