The **UNITED STATES**

v.

**Harold Theo GAZAWAY.**

**No. 25792.**

United States District Court
N. D. Georgia,
Atlanta Division.

March 7, 1969.

Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Robert B. Thompson, Gainesville, Ga., for defendant.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

Defendant seeks to suppress evidence obtained at his arrest, after he was stopped by a federal officer and a state officer, while traveling south toward Atlanta, Georgia, on Interstate Highway 75. He alleges that there was no probable cause for the officers to make the search, and, therefore, that the search and the use of the evidence obtained thereby is unconstitutional. The government argues that the circumstances known to the officers that prompted them to stop the vehicle, supplemented by their observation through a window of the one gallon plastic jugs within the vehicle, furnished the probable cause for the defendant's arrest. The court is generally in agreement with this conclusion, as this opinion will more fully explain.

A summary of the operative facts, which were stipulated to by the parties, indicates that, on June 10, 1968, Investigator Carl O. Koppe (Alcohol and Tobacco Tax Division, Internal Revenue Service) had a report from "other officers" that several cars, including a white 1961 Oldsmobile, four door sedan, with a trailer hitch and a certain license number, was being used to transport non-tax paid whiskey from North Georgia into the Atlanta area. This report included the fact that the defendant, Gazaway, had driven the Oldsmobile on prior occasions. About 9:30 P.M., Koppe, accompanied by Deputy Sheriff Clair E. Pequignot, Fulton County, Georgia, took a position beside Interstate Highway 75 at Mt. Paran Road in order to make observations of the traffic as it passed, in hopes of identifying one of the reported whiskey-carrying automobiles. The officers observed a 1961 Oldsmobile four door sedan, with a trailer hitch, traveling south toward Atlanta. The vehicle matched the description of the reported white Oldsmobile, including the trailer hitch, except for the fact that it had a new dark blue paint job, and a different license number. The officers followed the vehicle and "observed from its manner of ride that it appeared to be heavily loaded". Also, when the officers pulled alongside the vehicle, Koppe reported that "the driver would not look us in the face". Nevertheless, Koppe recognized the driver as the defendant, from photographs he had studied. Further, Koppe had knowledge that defendant had been arrested by the Atlanta Police Department on August 31, 1966, and January 20, 1968, for transporting and possession of non-tax paid whiskey. The officer sounded the siren and the defendant pulled over. The defendant approached the officers' car, and Deputy Pequignot asked him for his driver's license. However, Koppe walked forward to the defendant's vehicle and saw on the front floorboard and rear seat of the vehicle a load of one gallon plastic jugs. The defendant was then arrested for transporting non-tax paid whiskey in unstamped containers in violation of 26 U.S.C. § 5604(a) (1). After the arrest, Koppe opened the door of the vehicle, checked one jug, and found that, although it contained distilled spirits, it bore no tax stamps. At this juncture, the jugs and the Oldsmobile were seized, the jugs to be used as evidence, the Oldsmobile for forfeiture.

The question is: Did the arrest (to which the search was incident) meet the reasonableness standard of the Fourth Amendment? More crucial to this inquiry, however, is whether the initial detention of Gazaway, on sounding the siren and pulling his car to the side of the road, was sufficient under the facts available to the officers at that point in the proceedings, to "warrant a man of reasonable caution and the belief" that the action taken was appropriate? Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, 906 (1968). Cf. Sibron

v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). The constitutionality of the initial stopping is the threshold question, and will be considered first.

Prior to the discussion in the *Terry* case, the United States Supreme Court had not decided the question of the constitutionality of the initial detention by the police of an individual suspected of a crime, or merely stopped for routine questioning. Typical of the lack of definition on this point was the case of Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960), in which the Court indicated that if "* * * the policemen approached the standing taxi only for the purpose of routine interrogation, and that they had no intent to detain the petitioner beyond the momentary requirements of such a mission. * * *" and the narcotics were then voluntarily revealed to the policemen, the arrest which took place at the later time would be supported by probable cause. 364 U.S. at 262, 80 S.Ct. at 1436, 4 L. Ed.2d at 1694. The case was then remanded to the District Court for a determination of the time at which the arrest took place.

The holding in *Rios* seemed to contradict the earlier holding in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). There, the arrest was held to be complete at the time when the officers interrupted the two men and restricted their liberty of movement. Thus, the reasonableness of searches and seizures without warrants in fluid situations, such as on sidewalks and in moving cars, seemed to depend on the time in which the arrest took place, vis-à-vis the time of discovery of the incriminating evidence, whether by "frisk" or voluntary disclosure.

The facts in *Terry, supra,* analogous to the facts in the case at bar, involved the "stop" and "frisk". A veteran police officer had observed two of the three men he stopped on a sidewalk thoroughly "casing" a business establishment, which conduct made him suspect they were planning to rob it. Although the facts of this case do not include a "frisk", the discussion of the constitutional standards for determining the validity of the stop is applicable here.

In the *Terry* case, Chief Justice Warren made it abundantly clear that there is little usefulness in constitutional distinctions between words such as "stop", "detain", and "arrest", as applied, for example, to an officer stopping a citizen on the sidewalk (or pulling one to the side of highway). Regardless of such distinctions, the "* * * initial stages of the contact between the policeman and the citizen * * *" are not to be isolated from the scrutiny of the Fourth Amendment. 392 U.S. 17, 88 S.Ct. 1878, 20 L.Ed.2d 903.

> It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.
>
> \* \* \* \* \* \*
>
> * * * We therefore reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a "technical arrest" or a "full-blown search".

392 U.S. at 16, 88 S.Ct. at 1877, 20 L. Ed.2d at 903, 904. Therefore, when the officers in the case at bar sounded their siren and pulled the defendant over to the side of Interstate 75, their actions were subject to the reasonableness standard of the Fourth Amendment.

From *Terry*, we derive two specific steps in assessing the reasonableness of the officers' conduct: First, in pulling Gazaway over, to: "* * * focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen." 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed. at 905. Obviously, the primary interest in this case is that of effective crime prevention and detection, as in *Terry*. An allied interest is that of public health, in preventing the introduction to the public of

home made, frequently adulterated and poisonous, "moonshine whiskey". A third, not totally unrelated, interest served is that of the state officer in conducting a routine license check. (See Ga.Code Ann. § 92A–9904 (Sup.1968), which establishes driving without a driver's license, required by Title 92A, Chapter 4, of the Ga.Code Ann., as a misdemeanor, punishable by the courts.)

■ In other words, on balancing the need to detain against the invasion which the detention entails, the detention must appear to be a reasonable act under the circumstances. Therefore, this court holds that the public interest in this case authorized the detention of Gazaway for the limited purposes of inspection of his driver's license and automobile. (The facts, stipulated to by defendant, do not show that there was any questioning of defendant by the officers either before or after his arrest.)

■ However, the public interest being sufficient, in the abstract, to authorize such a detention, the question arises whether the officer will be "* * able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant * * *" the detention. 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. Stated objectively, would the facts available to the officer at the moment of the detention "warrant a man of reasonable caution in the belief" that the action taken was appropriate? 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. See Wartson v. United States, 400 F.2d 25, 28 (9th Cir. 1968).

The specific facts articulated in this case, together with rational inferences from those facts, are that, on report by other officers, Koppe and Pequignot were expecting liquor traffic from North Georgia to Atlanta, and that Interstate 75 was a possible route used for such traffic. They observed a car which was very similar to a description which had been given them as a whiskey-carrying automobile. This car appeared to have a new paint job, and the officers could have inferred that this was the white Oldsmobile (with trailer hitch), which they had been led to expect might be carrying moonshine. Moreover, it was "heavily loaded", further suggesting a load of whiskey. On pulling alongside the automobile, the defendant would not look Koppe in the face. Through his experience, Koppe could infer that this was an attempt to avoid identification. Nevertheless, Koppe recognized the man as Gazaway, who had been arrested on two occasions before, once only six months before, for the transportation of non-tax paid liquor.

Therefore, this court holds that, from the facts known to the officers and the rational inferences which they could draw therefrom, a man of reasonable caution would have been warranted in the belief that he was taking appropriate action in pulling Gazaway's car to the side of the road, and conducting a routine license check and inspection of his car. See Anderson v. United States, 399 F.2d 753, 755 (10th Cir. 1968).

■ Nor did the fact that Koppe walked forward to defendant's car, and looked through the window violate his constitutionally protected right against unreasonable search and seizure. In Williams v. United States, 404 F.2d 493 (5th Cir. Nov. 22, 1968), the police officer shined a flashlight into an unopened car, and observed two United States treasury checks on the floor between the seats, and a March of Dimes container in the open glove compartment. The court held that merely looking into the window was not a search, citing United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). The court also stated: "Of course, Treasury checks are a different class of contraband than narcotics or moonshine in that the latter are suspect by their nature." Here the contraband was moonshine, which was suspect by its nature. Further, no search was required to discover it. *See Lee, supra; Williams, supra.*

As the court held that the circumstances surrounding Williams' arrest fell within the limits of probable cause, so this court holds, as to the circumstances surrounding Gazaway's arrest. In other words, when Koppe observed the plastic jugs through the open window of the automobile, he had probable cause to suspect that a violation of the law was being perpetrated. He then appropriately arrested Gazaway, charged him, and warned him of his rights.

Because the initial detention of Gazaway was within the limits of the Fourth Amendment, and because his arrest was also within those limits, the search was constitutional, as incident to the lawful arrest. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925); Patenotte v. United States, 266 F.2d 647 (5th Cir. 1959).

The decision reached by the court obviates a decision as to whether the initial stopping met the standard for probable cause required for arrest without a warrant. The government argues convincingly that it does. The following factors have been held to be elements of probable cause for search of a vehicle without a warrant: (1) confidential information that a described vehicle would be used at or about a certain time to transport contraband and corroboration of those details through sighting the vehicle. See Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407 (1931); Bruner v. United States, 293 F.2d 621 (5th Cir. 1961); Patenotte v. United States, 266 F.2d 647 (5th Cir. 1959); Pegram v. United States, 267 F.2d 781 (6th Cir. 1959); United States v. O'Leary, 201 F.Supp. 926 (E.D.Tenn.1962). (2) The driver of the vehicle being a known violator of the liquor laws or having a reputation for violating the laws. See Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Husty, supra*; Crosby v. United States, 231 F.2d 679 (5th Cir. 1956); *cert. denied* 352 U.S. 831, 77 S.Ct. 46, 1 L.Ed.2d 52; *Patenotte, supra*. (3) The furtive conduct of the driver in turning his face to avoid recognition. See Schook v. United States, 337 F.2d 563 (8th Cir. 1964). (4) The vehicle giving the appearance of being heavily loaded. See Howard v. United States, 307 F.2d 350 (5th Cir. 1962); *Patenotte, supra*. (5) The reputation for transportation of non-tax paid whiskey of the route the vehicle is traveling or of the locality in which the vehicle is sighted. See *Brinegar, supra*; *Bruner, supra; Patenotte, supra*. The court might well have decided that the facts and circumstances in this case furnished probable cause for Gazaway's immediate arrest upon the initial stopping of his vehicle.

For the above reasons, the motion to suppress is denied.