299 N.E.2d 882 (1973)
Josephus W. WILLIAMS and Maylon J. Rogers, Petitioners-Appellants,
v.
STATE of Indiana, Respondent-Appellee.
No. 272A111.
Court of Appeals of Indiana, Second District.
August 13, 1973.
Rehearing Denied September 7, 1973.
Harriette Bailey Conn, Public Defender, Malcolm K. McClintick, Deputy Public Defender, for petitioners-appellants.
Theo. L. Sendak, Atty. Gen., John McArdle, Deputy Atty. Gen., Indianapolis, for respondent-appellee.
*883 SULLIVAN, Judge.
Appellants were charged with Armed Robbery. They timely filed a Motion to Suppress evidence allegedly obtained by virtue of an unlawful detention. The motion was granted in part and denied in part. Trial upon the Armed Robbery charge resulted in a hung jury. Thereafter, the affidavit was amended to charge appellants with Robbery. They did not file a Motion to Suppress with respect to the Robbery charge.[1] The subsequent trial upon that charge resulted in a conviction from which appellants did not appeal.[2] Appellants' Post-Conviction Relief Petition was denied and this appeal resulted.
Certain items of evidence were seized following the stopping of appellants' automobile and their arrest. Appellants contend that the trial court erred in concluding that the arresting officers acted properly in stopping the automobile in which they were riding despite the court's finding of fact that the officers did not have probable cause at the time to justify an arrest.
At approximately 10:00 P.M. on January 10, 1970, Sergeant Donald Cox and Trooper Robert Fox of the Indiana State Police were on patrol in uniform in an unmarked police car near West Lafayette when they received a radio dispatch that an armed robbery had just occurred at the King's Crown Motel in West Lafayette. The broadcast described the suspects as colored, both about six feet tall, one with a brown plaid jacket or shirt, and the other with a mustache. No description of a vehicle used, if any, was given nor was a direction of flight indicated.
Sergeant Cox and Trooper Fox proceeded to a near-by intersection located between West Lafayette and the temporary entrance to Interstate 65, the most direct route to Chicago, and parked so that they could observe the passing traffic. During the next few minutes three cars passed traveling north, away from the scene of the crime. The third car observed was a late model blue Lincoln with only one apparent occupant. Thinking that this occupant might possibly be a negro male, the officers pulled onto the highway and followed this third car which they then determined was proceeding at 70 miles per hour in a 65 mile per hour zone.[3] While following the car, the officers radioed the State Police for a check on the car's license plate and learned that there was no information on file concerning the car.
Sergeant Cox and Trooper Fox then overtook and passed the car, trying unsuccessfully to determine more about its occupant. Next, the officers pulled off the highway and again observed the car as it stopped for a flasher light and as it passed them, still apparently with but one occupant. The officers' respective testimony discloses a degree of uncertainty at this time as to whether the driver was a negro. The officers resumed following the car and by flashing a red light caused the driver *884 to stop the vehicle. As soon as the automobile was stopped, the driver stepped out and was asked to produce his driver's license. At the same time, one of the officers observed movement, later determined to be the other appellant, inside the car. Williams and Rogers were arrested and were subsequently tried, and convicted for the robbery of the motel, and sentenced to the Indiana State Reformatory for a period of not less than one year nor more than ten years. Some evidence found in the car at the time it was stopped by Sergeant Cox and Trooper Fox was admitted at the trial.
The record discloses that neither Sergeant Cox nor Trooper Fox had an arrest or search warrant.
In the court's ruling upon the Motion to Suppress, it specifically found that the State Troopers "had reasonable grounds to believe ... that one or both of the persons committing the robbery might be in the blue Lincoln which they observed ... [and] that they therefore had reasonable grounds to stop such Lincoln and interrogate the occupants briefly, although at the time they did so they did not have probable cause to believe that the occupants had committed the robbery." In its ruling, the trial court specifically relied upon Terry v. Ohio (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and quoting therefrom in its accompanying opinion said:
"[In Terry v. Ohio] the Supreme Court definitely rejected the contention that a police officer must have probable cause to make an arrest for a crime before he can halt and briefly detain an individual for the purpose of investigation. The opinion states (392 U.S. at 22, 88 S.Ct. at 1880):
`One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.'
"And again (392 U.S. 26, 88 S.Ct. 1882):
`It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest.'
"The contention that any interference whatever with a person's freedom of movement constitutes an `arrest' is rejected (392 U.S. 26, 88 S.Ct. 1882): `An arrest is the initial stage of a criminal prosecution. It is intended to vindicate society's interest in having its laws obeyed, and it is inevitably accompanied by future interference with the individual's freedom of movement, whether or not trial or conviction ultimately follows.' This statement comports with the definition of arrest found in Burns Ind. Stat. Ann. (1956 Repl.), Sec. 9-1004: `Arrest is the taking of a person into custody, that he may be held to answer for a public offense.'
"Clearly the rule today is that, provided he acts reasonably under the circumstances, a police officer has the right to halt and briefly detain a possible suspect while engaged in investigating the commission of a crime. Since the constitution by its terms prohibits unreasonable searches and seizures, this interpretation of it makes more sense than the old mechanical assumption that every detention was an `arrest' and must therefore be judged against the requirement of `probable cause' to believe that the person detained had committed a felony. The rule now is based directly on the constitution: is the detention reasonable.

"Considering these criteria, it is clear that the stopping of defendants' car by the police in this case for the purpose of *885 investigating a crime was reasonable, even though there was not probable cause at the time to justify an arrest."
It is solely this aspect of the trial court's ruling, presumably together with the evidentiary questions which flowed therefrom which petitioners present by their Post-Conviction appeal.
In Indiana, investigative stops are authorized by IC 1971, 35-3-1-1, Ind. Ann. Stat. § 9-1048 (Burns' 1972 Supp.) which reads as follows:
"When a law enforcement officer in a distinctive uniform, or in plain clothes after having identified himself as a law enforcement officer reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed by any person, observed in a public place said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action. Said stopping and inquiry shall be limited to those matters under the enforcement jurisdiction of the particular officer and when conducted within the limits specified herein shall not constitute official custody or arrest and shall not constitute grounds for civil liability for false arrest or false imprisonment."
The key provisions of this statute, applicable to the case before us, are:
(1) reasonable inference of criminal activity
(2) from the observation of unusual conduct under the circumstances and in light of the police officer's experience.
Looking first at the latter prerequisite, it is obvious that while an officer's inference may be supported by his experience, experience alone is insufficient to justify an investigatory stop. The statute requires unusual conduct from which the circumstances and the officer's experience permit an inference of criminal activity.
Thus, we must look to the record to determine whether Sergeant Cox and Trooper Fox observed conduct sufficiently unusual under the circumstances to permit, in light of their experience, a reasonable inference that the driver of the car which they stopped had committed, was committing, or was about to commit a crime. In this connection, it is important to note that the officers did not stop appellants' vehicle for speeding. Were it otherwise, a quite different question would be presented.
While we do not desire to unnecessarily hinder the use of "hunches" by experienced police officers, we are unable to conclude that under the circumstances it could be reasonably inferred that the single apparent occupant of the third automobile to pass the intersection observed by these police officers had committed the robbery in question. Therefore, IC 1971, 35-3-1-1, Ind. Ann. Stat. § 9-1048 (Burns' 1972 Supp.) cannot serve as justification for the stopping of appellants' car. See Sayne v. State (1972) Ind., 279 N.E.2d 196.
The factual circumstances here reviewed were not greatly dissimilar from those in Paxton v. State (1970) 255 Ind. 264, 263 N.E.2d 636, wherein the officer stopped the vehicle and announced to the driver that he was under arrest for reckless driving, having observed the vehicle parked on the wrong side of the street facing oncoming traffic. However, similarly to the testimony of the officers here, the arresting officer in Paxton testified on cross examination that his primary concern was locating a burglary suspect and other than the lateness of the hour, there was nothing to draw his attention to the vehicle stopped and that he did not, before stopping the car, have any reason to connect that car with the burglary. After a search of the vehicle disclosed an overcoat containing $38.00 in change, the defendant was placed under a pre-arrest charge of burglary, this *886 charge was apparently made upon the basis that the arresting officer had knowledge that a tavern in the area had been burglarized approximately one-half hour previously and that change from a cigarette machine had been stolen. The conviction was reversed. If anything, Paxton upon its facts is a stronger case for permitting admission of evidence found within the car than in the case before us. Our Supreme Court, however, held that the scope of the search was not justified under the circumstances.
To be sure, Paxton was a "search" case rather than a "detention" or "arrest" case as here. In our case, however, after stopping the vehicle, the officers observed a shotgun in open view within the car. The appellants were then arrested for armed robbery and a more thorough search was made of the car. We are not therefore concerned with a search issue as such but only with the legality of the stopping of the car. Terry, supra, would logically indicate that if that act was proper, whether or not it constituted an arrest, the Motion to Suppress was properly denied insofar as that ruling is here attacked. See Ford v. State (1971) Ind., 275 N.E.2d 808 (vehicle ran stop sign and was stopped by officer who with flashlight observed crowbar and bottles of liquor in plain view within the vehicle).
Notwithstanding the statutorily permitted detention hereinbefore discussed, and notwithstanding the investigatory detention sanctioned by Terry v. Ohio, supra, without the degree of probable cause required for an arrest, Indiana precedent, binding upon this Court, holds that an arrest takes place when a vehicle is stopped. United States v. Burhannon (7th Cir.1968) 388 F.2d 961; Luckett v. State (1972) Ind., 284 N.E.2d 738; Lynch v. State (1972) Ind., 280 N.E.2d 821; Patterson v. State (1970) 253 Ind. 499, 255 N.E.2d 520. We agree with the logic of the Terry opinion which recognizes the need for limited and reasonable stopping of persons under suspicious circumstances in the furtherance of competent and effective police protection and the prevention of crime as well as the apprehension of those who have committed crime. Additionally, we see no logical distinction between persons acting suspiciously while walking or standing and those in a vehicle being operated under suspicious circumstances. See State v. Taras (1972) 19 Ariz. App. 7, 504 P.2d 548. Furthermore, we find it difficult to view the stopping of the vehicle occupied by Williams and Rogers to be any more violative of their Fourth Amendment rights than the investigatory detention of the defendants in Terry, supra.
Our system of justice is not infallible nor are our police officers. Innocent and law abiding citizens, even those traveling the highways in automobiles, should thus be subject to being stopped and detained briefly for reasonable investigatory purposes. Such is a minor inconvenience and should be permitted in view of the greater good and promotion of safety for all citizens to be achieved by conscientious law enforcement investigation and possible if not probable apprehension of fleeing felons.
The law of this state remains, however, that when such a vehicle has been stopped, an arrest has been effected. We are thus confronted with the question, at least in view of the present posture of Indiana law, with whether the "arrest" here was made with probable cause. As defined in Luckett, probable cause for an arrest constitutes:
"... [such] facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a criminal offense."
The facts and circumstances here presented fall short of the test. The circumstances in Luckett which led the court to hold that the automobile was legally detained were that the arresting officers had a brief description of the automobile which *887 "appeared to be a green Chevrolet bearing a license plate prefix of 82." The automobile stopped was green (though not a Chevrolet) and bore a license plate prefix of 82J. The officers here had no description of an automobile to support their stopping of the appellants.
In State v. Smithers (1971) Ind., 269 N.E.2d 874, quoted in Luckett, supra, the police stopped a vehicle, pulled it over and checked the driver's operating license. No reason was given for stopping the car except that they thought the auto might contain juveniles in violation of the 11:00 P.M. curfew law. The trial court held that the State failed to show justification for stopping the car and that therefore seizure of marijuana which had been dropped from the car window by one of the defendants was in violation of the Fourth Amendment. Upon review of a reserved question of law, our Supreme Court said:
"* * * In order to determine the reasonableness of the intrusion into defendant's privacy by the police conduct in stopping the car we must examine the facts known to the officers at the time they stopped the car. In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court said:
`And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Beck v. State of Ohio, 379 U.S. 89, 96-97, 85 S.Ct. 223, 229, 13 L.Ed.2d 142 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial then inarticulate hunches, a result this Court has consistently refused to sanction. See, e.g. Beck v. Ohio, supra; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). And simple "`good faith on the part of the arresting officer is not enough.' * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be `secure in their persons, houses, papers and effects,' only in the discretion of the police." Beck v. Ohio, supra, 379 U.S. at 97, 85 S.Ct. at 229.' 392 U.S. at 21-22, 88 S.Ct. at 1880."
While the officers here no doubt guessed correctly that the vehicle stopped contained a person or persons who had committed a felony, at the time of the "arrest" they did not have probable cause to effect that "arrest".
Very recently, the Third District of our Court in Bryant v. State (1973) 299 N.E.2d 200 held that the stopping of a vehicle under suspicious circumstances was valid but in so doing has construed the present law of this State somewhat differently than do we. In Bryant, a distinction is drawn between a "technical arrest" and a "formal arrest", upon authority of Luckett v. State, supra. We do not interpret the Luckett case as authorization to stop a motor vehicle upon less than probable cause for arrest. While the latter decision discusses with approval the reasonable investigatory *888 detention permitted by Terry v. Ohio, supra, it notes that the question presented in Luckett was "whether the police had probable cause to stop the automobile initially." It is possible that the probable cause for a "formal arrest" is a more exacting standard than the probable cause for a "technical arrest". As the Supreme Court stated in Luckett:
"It is readily apparent that Officer Jackson did not have probable cause to stop every green automobile with an 82J license prefix and formally arrest its occupants." 284 N.E.2d 738, 741.
The fact remains, however, that vis a vis the defendant, the conduct of the arresting officer in Luckett was judged by the standard governing probable cause for an arrest, i.e., "the facts and circumstances known to the arresting officer which would warrant a man of reasonable caution and prudence in believing that the accused had committed or was committing a crime." 284 N.E.2d 738 at 741-742.
As heretofore stated, we are sympathetic to the logic of reasonable investigatory detentions as a needed law enforcement tool. In judicial conscience, however, we do not feel at liberty to follow the lead of our brothers of the Third District and to construe Luckett as having overruled the holdings of Lynch v. State, supra and Patterson v. State, supra.
We therefore necessarily conclude that the trial court's determination that the officers' stopping of the appellants' car was lawful, was erroneous as a matter of law. The subsequent seizure of incriminating evidence was thereby tainted and should not have been admitted at the trial. Mitchell v. State (1972) Ind., 287 N.E.2d 860.
The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.
WHITE, J., concurs with opinion.
BUCHANAN, P.J., dissents with opinion.
WHITE, Judge (concurring).
Bryant v. State (1973), Ind. App., 299 N.E.2d 200, 204, ___ Ind.Dec. ___, ___, has well said:
"The important point is not the nomenclature used to describe the activity, i.e., `stop and frisk', or "investigatory detention', or `arrest', etc. The important point is that the Fourth Amendment applies whenever a person is `seized'. To be lawful, any `search and seizure' must fall within the constitutional confines of reasonableness... ."
The facts at bar are insufficient to render the stopping reasonable. I therefore concur in the reversal without thereby necessarily endorsing all that is said in its support.
BUCHANAN, Presiding Judge (dissenting).
I respectfully dissent from the majority opinion on these grounds:
1. Their holding that an "arrest" inevitably and necessarily occurs when a moving vehicle is detained by police for investigative purposes thereby requiring application of the probable cause test rather than the test of reasonableness in the determination of the legality of such detention, effectively eliminates police investigative detention of motor vehicles in Indiana contrary to Luckett v. State, (1972) Ind., 284 N.E.2d 738.
2. The investigative stop of the Appellant's vehicle was reasonable on the basis of facts known to the officers at that time within the meaning of Luckett v. State, supra.
In order to determine whether there was a justifiable investigative detention a more *889 complete statement of the facts is necessary:

RESTATEMENT OF ESSENTIAL FACTS
On the night in question, Indiana State Police Sergeant Cox and Trooper Fox were on routine patrol duty when they received a radio dispatch at 10:02 P.M., informing them that an armed robbery had been committed at the King's Crown Motel in West Lafayette, Indiana, seven minutes prior to the broadcast. This report described the suspects as two Negroes, both about six feet tall. Shortly thereafter, a second report was received indicating that the suspects' car (which remained undescribed) may have traveled northwest.
At the time of these dispatches, the officers were located on State Road 18, four miles east of U.S. Highway 231, and fifteen miles northwest of the scene of the crime. Knowing Highway 231 to be a major link-up between Highway 52 and Interstate 65 (the most direct route to Chicago), the officers proceeded directly to the intersection of Highways 18 and 231 in order to observe northbound traffic on Highway 231.
Upon arrival at the intersection, approximately three minutes later, the officers parked their patrol car and observed traffic which, according to Trooper Fox's testimony, was unusually light for that time of day. Two to four minutes elapsed, during which time the officer observed two automobiles traveling north. When a third car came by, driven by Appellant Williams, the officers suspected the driver was a Negro.
At this time, the officers had been able to calculate from their knowledge of speed limits, road conditions, elapsed time and distances, that if the fleeing suspects were traveling northwest in the most direct route to Chicago, they could be observed at just this point.
Sergeant Cox testified to this fact as follows:
"We knew that a crime had been committed. We knew from the time element that the individual we were looking for had time to be at about this location at about this time."
Acting upon this information the officers decided to follow the automobile driven by Appellant Williams, and while doing so clocked its speed at approximately seventy miles per hour which was violative of the sixty-five mile per hour limit in that zone.
After receiving a third radio dispatch stating that one subject had used a sawed-off shotgun or pistol in the robbery, the officers overtook and passed the vehicle in an effort to get a better look at the occupant, which efforts were unsuccessful due to the darkness. The officers then proceeded a short distance to a second intersection located on the south edge of Wolcott, Indiana, where they parked in a service station drive. When the automobile came to a stop at this intersection, the officers took advantage of the improved lighting conditions to observe the occupant and one officer became certain that he was a Negro, although the other entertained some doubt.
They then stopped the automobile at the side of the road. While asking Appellant Williams for his driver's license, Trooper Fox looked into the car with his flashlight and saw Appellant Rogers lying in the back seat. Sergeant Cox discovered a sawed-off shotgun located on the front floor of the car in open view. These observations led the police officers to place the Appellants under arrest for armed robbery and to seize the incriminating evidence used at trial. (The appellants were later positively identified as the robbers by employees of the Motel.)

GROUND 1
The Indiana statute which gives "stop and frisk" powers to law enforcement officers reads:
9-1048. Officer's duty to interrogate persons in public place  Limitations  *890 Exemption from civil liability.  When a law enforcement officer in a distinctive uniform, or in plain clothes after having identified himself as a law enforcement officer reasonably infers, from the observation of unusual conduct under the circumstances and in light of his experience, that criminal activity has been, is being, or is about to be committed by any person, observed in a public place said officer may stop such person for a reasonable period of time and may make reasonable inquiries concerning the name and address of such person and an explanation of his action. Said stopping and inquiry shall be limited to those matters under the enforcement jurisdiction of the particular officer and when conducted within the limits specified herein shall not constitute official custody or arrest and shall not constitute grounds for civil liability for false arrest or false imprisonment. (Emphasis supplied.)
9-1049. Search of outer clothing  Disposition of weapons found.  When a law enforcement officer has stopped a person for temporary questioning pursuant to the preceding section and he further reasonably concludes in light of his experience that the person with whom he is dealing may be armed and presently dangerous, he shall be entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to assault him. If the officer discovers a weapon he may seize it and if it is unlawfully possessed, said weapon shall be held for evidence in the prosecution of the appropriate criminal charge. If such person is not arrested and charged, said weapon shall be returned to him.
9-1050. Act supplemental.  This act [§§ 9-1048 - 9-1050] shall be construed as supplemental to and not in limitation of any power or authority granted to law enforcement officers by other statutes or by the common law. (Emphasis supplied.)
I.C. 1971, §§ 35-3-1-1 to 35-3-1-3, Ind. Ann. Stat. §§ 9-1048 to 9-1050 (Burns 1972 Suppl.)
(These sections are hereafter collectively referred to as the Statute and individually by section number.)
The Statute was enacted in 1969 apparently in response to the U.S. Supreme Court's decision in Terry v. State of Ohio, (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which definitively enunciated the constitutional validity of non-arrest police detentions. The detention in Terry resulted solely from the on-the-spot observations of a police officer of the suspicious conduct of the defendants.
The Statute adopts the same concept. A stop is authorized as a result of a police officer's "observation of unusual conduct" under the circumstances. It is not intended to apply if the officer has prior knowledge of criminal activity. Thus the majority misinterpret and misapply the Statute by measuring the officer's conduct solely in terms of observation of unusual conduct.
Section 1050 expressly recognizes the limited application of §§ 1048 and 1049 by stating the Statute is supplemental to and not in limitation of other statutes or the common law.
The same limitation was implicitly recognized by our Supreme Court in Luckett v. State, supra, which involved similar facts and significantly omitted any reference to the Statute. Furthermore, the Court found a stop, or investigative detention, was justified if reasonable under the circumstances and did not utilize the probable cause test as was mistakenly done by the majority in the case before us.
Luckett merits closer scrutiny. A police officer received a radio dispatch alerting him to a recent burglary. The broadcast described the vehicle as a Chevrolet and gave its license plate prefix and described *891 some of the stolen property. The officer subsequently observed an automobile which fit the description except for the make (Oldsmobile). The driver was stopped and requested by the officer to produce his operator's license. At this time the officer, using a flashlight, observed some of the stolen goods in plain view in the back seat, whereupon the vehicle's occupants were placed under arrest.
The court found the officer's conduct a justifiable detention even though he did not have probable cause to "formally arrest" the automobile's occupants:
"However, this case involves the flight of suspected felons, and Officer Jackson was placed in a position where he had to choose between immediate action on one hand and restraint on the other. Efficient and effective law enforcement, in which there is a strong governmental interest, can best be accomplished by immediate action such as that taken by Officer Jackson in the instant case. It appears to be well settled that there is nothing automatically unconstitutional in subjecting citizens to a brief detention under circumstances where probable cause for a formal arrest is lacking." (Original emphasis as to the word "automatically" only.) Luckett, supra, 284 N.E.2d at 741.
In Luckett, the court clearly distinguished between "detention" and "arrest" in an automobile-stop transaction recognizing that a reasonable detention may ripen into an arrest:
"Upon reaching the car, Jackson, who was rightfully positioned, shined his flashlight inside where he observed the case of wristwatches which had been placed on the back seat. At this time, the suspects were placed under formal arrest, thus ending the period of brief detention. The reasonableness of an investigation conducted during a period of brief detention where probable cause for a formal arrest is lacking is a matter which will have to be determined on a case by case basis. Under the facts of the case at bar, we hold that the investigation was reasonably conducted and that no constitutional violation occurred. Furthermore, we are of the opinion that when Jackson observed the wristwatches he then had probable cause to arrest the appellant." (Emphasis supplied.) Luckett, supra, at 743.
In formulating the standard of "reasonableness," Justice Hunter speaking for a unanimous court did not refer to the Statute, or its requirement of "unusual conduct."
It would seem, then, logically enough, that two standards exist by which the legality of non-arrest detentions may be measured. The standard of "unusual conduct" which should be employed per the Statute in cases where the intrusion is founded upon on-the-scene observations and the Luckett test, applicable to situations, as here, where police conduct is based upon independent knowledge and circumstances apart from such observations.[1] This is consistent with § 1050 of the Statute, Terry v. State of Ohio, supra, and recent enlargements of the Terry rule by the U.S. Supreme Court. See, e.g., Adams, Warden v. Williams, (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612.
Were it not so police officers, with prior knowledge of criminal activity could only detain moving vehicles if probable cause was present or for observation of unusual conduct.
Other Indiana cases relied upon by the majority in support of its position that an arrest occurs whenever a vehicle is stopped *892 dealt with situations in which probable cause was found to exist in the first instance. Lynch v. State, (1972) Ind., 280 N.E.2d 821; Paxton v. State, (1970) 255 Ind. 264, 263 N.E.2d 636. Patterson v. State, (1970) 253 Ind. 499, 255 N.E.2d 520. They are not pertinent to the inquiry of justifiable investigative detention.
As many foreign jurisdictions recognize, compelling reasons exist for permitting a police officer to stop and briefly detain a motor vehicle absent probable cause. See, e.g., United States v. Miller, (10th Cir.1971) 452 F.2d 731, cert. denied, 407 U.S. 926, 92 S.Ct. 2466, 32 L.Ed.2d 813; United States v. Catalano, (7th Cir.1971) 450 F.2d 985, cert. denied, 405 U.S. 928, 92 S.Ct. 980, 30 L.Ed.2d 802; Carpenter v. Sigler, (8th Cir.1969) 419 F.2d 169; United States v. Gazaway, (N.D.Ga. 1969) 297 F. Supp. 67; Bramlette v. Superior Court of Merced County, (1969) 273 Cal. App.2d 799, 78 Cal. Rptr. 532; Palmore v. United States, (D.C.Ct. of App. 1972) 290 A.2d 573, footnote 24 at 583 (U.S. appeal pending).
Ours is a nation on wheels and the frequent use of the automobile in the commission of crime often places police officers in emergency situations requiring immediate action. Luckett v. State. They have a limited range of responses. Do nothing, allow escape, and risk violence visited upon the public by fleeing criminals. Continued surveillance may also be possible, but is unacceptable if suspects are thought to be armed. Resort to "arrest" is also an alternative, but only if the officers do indeed possess enough information to constitute probable cause in a technical sense.
The only effective alternative in many instances involving suspects in moving vehicles is direct action half way between inaction and arrest, i.e., investigative detention reasonably conducted under the circumstances. The recognized governmental interest in apprehension of criminals demands such investigative stops: Ballou v. Commonwealth of Massachusetts, (1st Cir.1968) 403 F.2d 982, cert. denied, 394 U.S. 909, 89 S.Ct. 1024, 22 L.Ed.2d 222; See also: United States v. Edwards, (5th Cir.1972) 469 F.2d 1362; United States v. Catalano, supra; Cox v. United States, (D.C.Ct. of App. 1969) 256 A.2d 917; W. LaFave, "Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40 (1968); Note, 41 S. Cal.L.Rev. 161 (1967).
By embracing a doctrine of probable cause as a requirement for investigative detention of moving vehicles in Indiana, the majority have seriously crippled law enforcement.
If this holding stands, police officers will be little more than beggars on crime-ridden streets.

GROUND 2
According to Luckett an investigative detention of a moving vehicle is justifiable if "the facts known ... at the time he [the police officer] stopped the car were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropriate."
Various factors determine reasonableness of the stop.
Location of the vehicle within the range of possible flight is one. If the vehicle is observed within the span of time reasonably required to travel from the scene of the crime to the point of observation a stop may be justified even if the officers received a description of the car which was at variance with the vehicle observed. Luckett v. State, supra; Cox v. United States, supra; Bailey v. United States, (1967) 128 U.S.App.D.C. 354, 389 F.2d 305.
Likewise flight of a vehicle from the scene of the crime along a logical escape route may be another factor in determining reasonableness. Coleman v. United States, (1969) 137 U.S.App.D.C. 48, 420 F.2d 616.
The necessity of rapid response in an emergency to avoid escape by the suspects *893 should be considered. See, e.g., Luckett v. State, supra; United States v. Edwards, supra; United States v. Catalano, supra; Coleman v. United States, supra; Carpenter v. Sigler, supra; Ballou v. Commonwealth of Massachusetts, supra.
Lack of visibility due to darkness may tend to justify temporary detention: Carpenter v. Sigler, supra; Bramlette v. Superior Court of Merced County, supra; People v. Henze, (1967) 253 Cal. App.2d 986, 61 Cal. Rptr. 545.
Lack of or inaccurate description does not destroy reasonableness of the stop: Luckett v. State, supra (different model). United States v. Edwards, supra; Cox v. United States, supra (different color).
In the fact situation under consideration the combination of these factors adds up to a reasonable stop. The location of the stopped vehicle was within the range of possible flight. In fact the juxtaposition of time and distance between the patrol car and the appellant's auto as calculated by the officers, pinpointed the exact meeting place of the two vehicles on Road 231, the most logical escape route northwest of West Lafayette  and the most direct route in a northwesterly direction to Chicago. It was dark. The suspects were known to be two Negroes  one was observed in a vehicle traveling in excess of the legal speed limit. Even though immediate action was necessary, the auto was trailed and the occupant observed for more accurate identification.
Unlike Luckett in which the officers had the color of the automobile, three digits of the license plate prefix, and three suspects appearing in the car, there nevertheless was a coalescence of circumstances sufficient to reasonably justify investigative detention of appellant's vehicle. The actions of these police officers was proper and reasonable police action  witnessed by the ripening of their temporary detention into arrest for probable cause when they observed the second suspect and a sawed-off shotgun out of sight in the rear of appellant's automobile.
Two random samples are illustrative of investigative detentions held to be reasonable under less persuasive circumstances.
In Carpenter v. Sigler, (8th Cir.1969) 419 F.2d 169, the court upheld an investigative detention based upon Terry, looking at these meager facts:
"It was an early morning hour in a small town where unidentified cars do not routinely travel at that time. The car had out of county license plates. There had been a series of burglaries in the town. During the period of surveillance by the officers the car moved very slowly past closed business establishments and pursued a rather erratic course through the streets of the town. These facts taken together all point to sufficient justification for stopping the Carpenter auto and requiring the occupants to identify themselves."
In United States v. Jackson, (9th Cir.1971) 448 F.2d 963, police detention was upheld on facts bearing marked resemblance to those before us. City police officers were on routine patrol duty at 11:20 P.M. when they received a radio report that a store had been robbed. The report described the suspects as two Negro males and stated that they fled in an easterly direction. Being familiar with the area, the officers proceeded to an intersection which they calculated to be in the line of a possible escape route. Moments after reaching the intersection, the officers saw an automobile traveling south with three Negro males inside. After a short period of surveillance, the car was stopped by use of a flashing red light.
Finding that the officers were faced with an emergency situation, that the third occupant in the vehicle could have been a "lookout" or driver during the commission of the crime and that the automobile in which the subjects were riding was headed in the direction of a Negro area of the *894 city, the court held that the officers' actions were justifiable:
"Under these facts the officers acted reasonably in stopping the Cadillac and questioning the occupants concerning their identity and residences. This was intelligent, effective police work. If police officers may not do what was done here, law enforcement would be seriously crippled. The Fourth Amendment was not intended to handcuff the police in their reasonable effort to handcuff criminals. [Citations omitted.]" 448 F.2d, at 970. (Emphasis supplied.)
Whether the stopping of a moving vehicle for investigative purposes under appropriate circumstances is denominated an "arrest", a "preliminary arrest", or whatever, the urgent need for investigative detention exists. Furthermore, such stops are legally justifiable by Indiana, federal, and sister state cases. To draw fine lines as to what constitutes an "arrest" in these circumstances is to engage in stultifying semantics.
The decision of the learned trial judge should be affirmed.
NOTES
[1] No contention is made that failure to refile the Motion to Suppress constitutes a waiver. Compare Hess v. State (1973) Ind., 297 N.E.2d 413, holding that failure to refile a Motion to Quash in a trial de novo before a Superior Court following conviction of a misdemeanor in City Court, presents no issue upon appellate review.
[2] The State apparently did not below and does not here contend that Petitioners by failing to take a direct appeal waived the error asserted. Langley v. State (1971) Ind., 267 N.E.2d 538.
[3] The record conclusively shows that the officers did not stop appellants' car for this traffic violation, e.g., on cross-examination at the hearing to suppress evidence, Trooper Fox responded to the following questions:

"Q. And then at that point did you decide to continue to pursue this car to stop it or to stop the driver for violation of the speeding laws of the State of Indiana?
A. No sir, not at that time.
Q. Did at any time you decide to stop this car for violation of the speeding laws of the State of Indiana?
A. No sir."
[1] Recently, in Bryant v. State (Ct. of App., 1973) 299 N.E.2d 200, Chief Judge Hoffman, speaking for the Third District of this court, similarly interprets Luckett v. State as authorizing police detentions of motor vehicles when "under the circumstances presented, a man of reasonable caution would have believed the `stop' was warranted in the interest of effective law enforcement."